**Thomas MATHIS, Plaintiff,**

v.

**Mr. DiGIACINTO, Warden, et al., Defendants.**

Civ. A. No. 76–1737.

United States District Court, E. D. Pennsylvania.

March 15, 1977.

Thomas Mathis, pro se.

John D. DiGiacomo, Teel, Stettz, Shiner & DiGiacomo, Easton, Pa., for defendants.

MEMORANDUM AND ORDER

BRODERICK, District Judge.

This is a prisoner's civil rights action pursuant to Sections 1983, 1985(3), and 1986 of Title 42. Jurisdiction is asserted pursuant to § 1343(3) of Title 28. In this action, plaintiff seeks damages and injunctive relief against the defendant prison officials for alleged violations of his constitutional rights while incarcerated at Northampton County Prison, Northampton, Pennsylvania.

Presently before this Court is defendants' Motion for Summary Judgment pursuant to Rule 56, F.R.Civ.P. Defendants' Motion alleges that, because no genuine issue as to any material fact exists and because defendants are entitled to judgment as a matter of law, summary judgment should be entered in favor of all defendants. Plaintiff has responded to this Motion and has submitted accompanying exhibits and affidavits.

█ In reviewing the plaintiff's allegations in his *pro se* pleadings, this Court has held both plaintiff's complaint and his response to defendants' motion to a less stringent standard than that applied to formal pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

The Civil Rights Act, 42 U.S.C. § 1983, provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order for the plaintiff to state a claim for relief pursuant to this Act, his complaint must necessarily allege specific acts and conduct by state officials which violate some *constitutional* right of the plaintiff. In another prisoner's civil rights action, our Third Circuit pointed out:

an allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within section 1983. More is needed than a naked averment that a *tort* was committed under the color of state law; the wrongdoing must amount to a deprivation of a right, privilege, or immunity secured by the Constitution and laws of the United States. *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970) (emphasis added).

Accordingly, even if factually valid, unless plaintiff's claims of deprivation of rights rise to the level of constitutional significance, the defendants are entitled, as a matter of law, to summary judgment.

In this action, the plaintiff has alleged numerous constitutional infringements by the defendants. Most of these alleged infringements occurred during the period that plaintiff was placed in solitary confinement after his participation in an attempted escape from the prison on December 26, 1975.

For purposes of this memorandum and order, the plaintiff's allegations will be grouped and discussed in the following general areas:

(A) Solitary confinement for 32 days (December 26, 1975 to January 27, 1976) without a disciplinary hearing;

(B) Deprivation of certain privileges while in solitary confinement (incoming mail, writing materials, visitation privileges, and showers);

(C) Denial of access to the courts and to legal materials;

(D) Loss or destruction of personal property; and

(E) Denial of medical care and/or medication.

I.

*Plaintiff's Allegations*

(A) to (C)

Assuming for the purpose of this discussion that all of the allegations in plaintiff's pleadings and affidavits in response to de-

fendants' Motion are true, and after a careful review of the record and the law, this Court is of the opinion that a genuine issue of fact is presented by the affidavits. Accordingly, summary judgment must be denied on Points (A), (B) and (C), and plaintiff will be given an opportunity to present evidence regarding his commitment in solitary confinement.

After his arrest, following his participation in an attempted escape from prison on December 26, 1976, plaintiff was placed in solitary confinement at Northampton County Prison for 32 days. At no time during this period of solitary confinement was plaintiff given a disciplinary hearing despite requests by plaintiff for such a hearing on at least two occasions.

Plaintiff further alleges that during this 32-day period of solitary confinement, all of his incoming mail was withheld by the defendant prison officials; that he was denied the right to communicate with his family despite requests to do so on many occasions; that he was informed that he would not be permitted visits while in solitary confinement and, in fact, on January 7, 1976, his girlfriend was not permitted to see him; and, finally, that, despite many requests, he was not permitted to shower.[1]

On January 3, 1976, plaintiff alleges that he attempted to send "legal mail to the courts" but was denied the use of writing materials. Despite more than one request to a number of prison officers, plaintiff further alleges that he was allowed to write to his attorney only after 27 days of solitary confinement. In fact, on December 27, 1975, plaintiff specifically alleges that he requested but was denied permission to write to his attorney.[2]

In response to plaintiff's allegations, the defendants assert that plaintiff was placed in solitary confinement only as a consequence of his attempted escape from the prison and assault on a prison guard—plaintiff was placed in this protective custody for security reasons and in view of the clear and present danger that plaintiff presented to prison officials.

In their affidavits, defendants state that plaintiff was treated in accordance with established prison policy—writing materials are provided upon request; incoming mail is delivered to each prisoner; visitors are permitted to see all prisoners, including those in solitary confinement; and opportunities for showers are provided three times a week. Defendants do admit that plaintiff's visitation privileges were temporarily removed from December 26, 1975 to December 28, 1975, immediately following the attempted prison escape. However, they allege in their affidavit that these privileges were restored by December 29, 1975.[3] Finally, defendants allege that at least on one occasion during this period, the shift report for December 30, 1975 indicates that plaintiff refused to take a shower.

Furthermore, defendants deny, in their affidavit, that plaintiff was treated in a manner in contravention of the general prison policy regarding access to his attorney or to the courts. Writing materials are provided upon request for any purpose. It is also noted on the December 30, 1975 shift report that plaintiff was permitted to, and did, call his attorney.

1. Plaintiff alleges that he requested to take showers, but was denied permission to do so on the following dates: December 29, 1975; January 2, 1976; January 3, 1976; January 4, 1976; January 5, 1976; and January 6, 1976.

2. Plaintiff's allegations are not based solely on conclusory averments in his complaint. In response to defendants' Motion for Summary Judgment, plaintiff has submitted affidavits and exhibits in opposition to defendants' Motion. The affidavits were taken from two fellow prisoners of plaintiff, and based on their personal knowledge of the circumstances relating to the allegations in plaintiff's complaint.

Plaintiff has also submitted an uncertified copy of notes of testimony taken at a hearing before Judge Clinton Budd Palmer, Northampton County Court of Common Pleas, on April 21, 1976. At this hearing, defendant Phillip John Spaziai, Assistant Director of Treatment, testified that it was standard procedure to deny prisoners in solitary confinement access to writing materials or visitors.

3. The shift report for December 29, 1975 also indicates that plaintiff's phone and visiting privileges were restored on that date.

■ The allegations presented in all of the pleadings of all of the parties demonstrate that there are many factual disputes regarding the general areas discussed above ((A) to (C)). This Court cannot resolve those factual disputes based on the record established to date.

■ Prison officials must be afforded a certain amount of discretion and latitude in safeguarding prisoners committed to their custody. "Even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety, and security." *Gittlemacker v. Prasse, supra* at 4. The task of striking the proper balance between the rights of the inmates while in prison and the practical necessities of prison discipline and security must, in the first instance, lie with the responsible state prison officials. Accordingly, federal courts have been reluctant to interfere with the exercise of state prison administration absent exceptional circumstances or the denial of a federal right.

■ It is, therefore, well established that solitary confinement is not per se cruel and unusual. *Newsome v. Sielaff*, 375 F.Supp. 1189 (E.D.Pa.1974). Maximum security confinement must be permitted where, in the judgment of the prison authorities, such confinement is necessary for the protection of the general prison population, for the prison personnel, or for the prisoner himself. In their affidavits, defendants claim that their actions in this case, in placing plaintiff in solitary confinement without notice or hearing, were solely in response to the plaintiff's attempted escape and assault on a prison guard.

■ Whenever possible, some type of notice of the charges and/or hearing should be given to the prisoner before his transfer from the general prison population to solitary confinement in order to meet minimal due process requirements.[4]

A similar situation was presented in *Biagiarelli v. Sielaff*, 483 F.2d 508 (3d Cir. 1973). In that case, plaintiff was taken from his cell on October 19, 1971, without any notice or hearing, and placed in solitary confinement until December 24, 1971, a little over two months later. The prison authorities justified this transfer on the basis that they had received information that the plaintiff was conspiring to escape from prison, i. e., an emergency situation existed requiring prompt action on their part. Although the district court entered declaratory judgment for the plaintiff, the Court of Appeals vacated that order because of the circumstances of the case. The Court of Appeals pointed out that:

> This case presents an example of ,the "unusual circumstances" referred to in *Gray*. Here the prison authorities, in order to maintain control and to insure the continued security of the institution, were entitled to postpone notice of the charges, or the holding of a hearing for a reasonable period of time. . . . This was not the ordinary case of a prisoner being placed in administrative or punitive segregation for disciplinary purposes, but the case of a prisoner alleged to have been involved in a conspiracy to escape from prison. *Id.* at 511–12 (footnotes omitted).

Because of the unusual circumstances presented by the plaintiff's conspiracy to escape, the Court of Appeals would not apply a *per se* rule that placement of a prisoner in solitary confinement without notice and hearing constitutes a constitutional deprivation. Hard and fast rules applicable to every institution and in every situation that might arise could not be adopted. Instead,

> [w]hen the notice reasonably should have been given, or the hearing held, depended on when the threat to the institution sub-

---

4. In *Gray v. Creamer*, 465 F.2d 179 (3d Cir. 1972), the Court of Appeals held, on review of the district court's grant of the prison official's motion to dismiss the prisoner's complaint for failure to state a claim upon which relief can be granted, that they were not prepared to suggest the precise requirements of the due process clause. However, the court did state that, absent unusual circumstances, due process safeguards accompany the imposition by state prison officials of substantial punishment, including the transfer of a prisoner to solitary confinement.

sided, regardless of whether he was held in punitive or administrative segregation. . . . Emergency conditions may require prompt and decisive administrative actions, and what is reasonable must be measured against the urgency of the circumstance necessitating the action. *Id.* at 512.

In the circumstances of this case, this Court is not prepared to hold that, as a matter of law, such notice and/or hearing was required before plaintiff was placed in solitary confinement. Nor is the Court prepared to hold that 32 days was an unreasonable length of time to keep plaintiff in solitary confinement without such notice and/or hearing. In this case, the plaintiff will be given an opportunity to present all facts and circumstances which may demonstrate that he has suffered a deprivation of constitutional dimension under the standards set forth in *Gray* and in *Biagiarelli.* Accordingly, the defendants' Motion for Summary Judgment must be denied and a hearing must be held in order to fully determine all of the facts and circumstances surrounding plaintiff's commitment to solitary confinement for the 32-day period, including the existence and urgency of any emergency conditions which may have necessitated such action.

█ While placed in solitary confinement, plaintiff was apparently deprived of certain privileges that were available to the general prison population—delivery of incoming mail, use of writing materials, visitation rights, and the right to shower on request. State prison officials certainly have no unfettered discretion to withhold these privileges and such conduct may give rise to a constitutional claim. *Newsome v. Sielaff, supra.* However, the test of whether or not in a particular case the depriva-

tion is reasonable depends on all the circumstances and requires a balancing of the prison's asserted interest against the claimed right of the prisoner and the degree to which it has allegedly been infringed by the conduct of the prison officials. *Bauer v. Sielaff,* 372 F.Supp. 1104 (E.D.Pa.1974). Here, defendants allege that they acted in response to emergency conditions—plaintiff's attempted escape. Furthermore, plaintiff has not alleged that he was denied any of the minimum necessities of life or that he was placed in deplorable living conditions.

Since a hearing will be necessary on other issues raised by plaintiff, he will be given every opportunity at such hearing to present any evidence which demonstrates that the deprivation of these privileges rises to the level of a constitutional deprivation.

█ Access to the courts is guaranteed by the due process clause of the Fourteenth Amendment. Prison regulations which reasonably limit the time, place, and manner in which prisoners may engage in legal research and may prepare legal papers do not transgress this constitutional protection so long as the regulations do not frustrate such access. *Gittlemacker v. Prasse, supra* at 7. However, any denial of access to the courts or to counsel is regrettable and must be strictly circumscribed in order to prevent the complete disregard of a prisoner's constitutional rights by prison officials.[5]

Since a clear factual dispute exists as to whether or not plaintiff's access to the courts and to his counsel were infringed and, if so, whether such conduct was reasonable in light of the circumstances, defendants' Motion for Summary Judgment must be denied. At the hearing, plaintiff will be given an opportunity to show that his access to the courts and to his counsel

---

5. In this regard, it should be noted that defendants deny that plaintiff was denied access to the courts or to his attorney, which would be in contravention of general prison policy. In fact, the December 30, 1975 shift report indicates that plaintiff was permitted to and did call his attorney. Plaintiff was also represented at his arraignment and hearing pursuant to the criminal charges regarding his attempted escape from prison, which apparently was held during his 32-day commitment in solitary confinement. Furthermore, in the notes of testimony submitted by plaintiff with his response to defendants' Motion for Summary Judgment, defendant Spaziai testified that plaintiff was permitted to contact his attorney during this period in solitary confinement.

was denied and that such denial, if demonstrated, rises to the level of a constitutional deprivation.

## II.

### Plaintiff's Allegation

### (D)

### Loss or Destruction of Plaintiff's Property

█ Assuming for the purpose of the discussion of this point that all of the allegations in plaintiff's complaint and response to defendants' Motion are valid, and after a careful review of the law, this Court is of the opinion that summary judgment must be denied on this point.

Plaintiff has alleged that, while he was in solitary confinement at the prison, the defendant prison officials lost or destroyed his personal clothing and belongings. In support of this allegation, plaintiff has submitted the affidavit of a fellow inmate at Northampton County Prison who was personally acquainted with the plaintiff. The affiant stated that he had been in plaintiff's cell on several occasions. The affiant also knew that plaintiff had certain specified belongings which he had brought witn him to the Northampton County Prison. The affiant further stated that, after plaintiff was placed in solitary confinement, prison officials came to plaintiff's cell and removed all of his personal belongings which plaintiff informed him have never been returned. Defendants claim that the allegation is wholly without merit. In support, defendants offer a copy of a *Personal Property Receipt* dated October 21, 1975 and signed by plaintiff. According to this receipt, no cash or property was taken from the plaintiff.[6]

*Russell v. Bodner*, 489 F.2d 280 (3d Cir. 1973), is dispositive of this matter. In *Russell*, a prisoner's Civil Rights Act complaint alleged that a guard at the prison entered plaintiff's cell and took seven packages of his cigarettes. Our Third Circuit held that the complaint sufficiently alleged that the guard entered plaintiff's cell and confiscated his cigarettes without justification. The District Court's order dismissing the complaint as frivolous was, therefore, reversed and the case was remanded for further proceedings. However, "it must be emphasized that to state a claim under the civil rights act, a plaintiff must allege conduct which deprives him of rights, privileges or immunities secured to him by the Constitution or laws of the United States." *Newsome v. Sielaff*, supra at 1194. As Judge VanArtsdalen pointed out in *Newsome*, some common law and statutory torts, although actionable in state court as a tort, do not rise to a level of constitutional deprivation. *Id.*

Since a hearing will be necessary on other issues raised by the plaintiff, plaintiff will be permitted to present any evidence at the hearing which may demonstrate that his claim or deprivation of property is based on constitutional or federal law and not on state tort law.

## III.

### Plaintiff's Allegation

### (E)

### Denial of Medical Care

█ Assuming for the purpose of the discussion of this point that all of the allegations in plaintiff's complaint and response to defendant's Motion are true, and after a careful review of the law and the facts in the record, this Court is of the opinion that defendants' Motion for Summary Judgment must be denied and a hearing be held in order to determine the extent of plaintiff's need for medical care and defendants' refusal thereof.

Plaintiff alleges that while in solitary confinement the prison officials both denied him the right to see the prison doctor and

---

6. This document apparently relates only to plaintiff's initial entry into the prison. However, plaintiff does not claim that his belongings were taken at that time but, instead, during the 32-day period he spent in solitary confinement from December 26, 1975 to January 27, 1976.

also denied him medication for a skin condition despite his repeated requests. Plaintiff had been receiving this prescribed medication prior to his commitment in solitary confinement. At various times, plaintiff alleges that he requested permission to use the medication from the officer at his cell. Because he was denied its use, and the right to see the prison doctor, plaintiff alleges that he developed a skin irritation.

In their Motion for Summary Judgment, defendants allege that, during the relevant period, plaintiff's prison medical records are devoid of any reference to such skin condition. This allegation is supported by copies of those medical records which have been attached to defendants' Motion as exhibits. In their affidavits, defendants further state that this skin condition was either non-existent or of a minor nature.

In his response to the Motion for Summary Judgment, plaintiff alleges that his medical records do not reflect this skin condition because he was not allowed to see the doctor nor did the doctor visit his cell during the period that he was in solitary confinement.

Since, for purposes of this discussion, all factual disputes must be resolved in favor of the plaintiff, this Court cannot hold, as a matter of law, that plaintiff's allegations do not rise to the level of a constitutional deprivation without a hearing for the purpose of determining the entire background and surrounding circumstances of plaintiff's allegations.

As set forth above, an essential element of an actionable civil rights complaint is the demonstration of a constitutional deprivation. Mere negligence in giving or in failing to give medical treatment is not sufficient to rise to the level of a constitutional deprivation. *Church v. Hegstrom*, 416 F.2d 449, 451 (2d Cir. 1969). Our Third Circuit Court of Appeals has stated that:

> It is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim

is presented. (footnote omitted). *Gittlemacker v. Prasse, supra* at 6.

The Supreme Court has recently established certain elementary principles governing the state's obligation to provide medical care for those whom it has incarcerated. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court concluded that:

> . . . deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" (citation omitted) proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.
>
> .  .  .  .  .
>
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment (footnotes omitted). *Id.* 429 U.S. at 106, 97 S.Ct. at 291–292.

The Supreme Court specifically approved the standards and terminology set forth in various Courts of Appeals decisions, including the standard set forth above in *Gittlemacker v. Prasse, supra.*

Clearly, in this case, factual disputes exist as to the nature and extent of plaintiff's medical condition, as to whether or not he had ever requested medical assistance, and as to whether or not the defendants denied

those requests. Since there are factual disputes, the only question before this Court on defendants' Motion for Summary Judgment is whether defendants are nevertheless entitled to summary judgment as a matter of law notwithstanding the validity of plaintiff's allegations of the facts.

Accepting the factual allegations in plaintiff's complaint and affidavits as true, it is possible that the prison guards or other prison officials did, in fact, deliberately deny or delay plaintiff's access to medical care or to necessary medication. Depending on the seriousness of plaintiff's skin condition and other medical needs, the defendants' alleged conduct, or that of the prison guards for whom defendants are responsible, may well constitute an actionable constitutional deprivation as defined in *Estelle and Gittlemacker* and may well support the imposition of liability on those responsible. Therefore, a hearing is necessary in order to determine the nature, extent, and seriousness of plaintiff's skin condition; his need for medical care and/or medication; and the defendants' or prison guards' conduct in response to any requests by plaintiff for medical care and/or medication as well as the reasons for such conduct.

Accordingly, for the reasons set forth above, defendants' Motion for Summary Judgment must be denied. Plaintiff is to be given an opportunity, at a hearing, to present any evidence which will fully develop his allegations and which will demonstrate that such allegations rise to the level of constitutional deprivations.