Waahid MUSLIM a/k/a David Dewees Richardson, Plaintiff,

v.

Thomas G. FRAME, Warden, et al., Defendants.

Civ. A. No. 93–3734.

United States District Court, E.D. Pennsylvania.

June 10, 1994.

Waahid Muslim, pro se.

Joseph Goldberg, Deborah Doyle, Margolis, Edelstein & Scherlis, Philadelphia, PA, for defendants.

### *ORDER*

LOUIS H. POLLAK, District Judge.

Upon consideration of the Report and Recommendation of Thomas J. Rueter, United States Magistrate Judge, and of the objections filed by plaintiff to the Report and Recommendation,[1] it is hereby ORDERED and DIRECTED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. Defendants' Motion to Dismiss and for Summary Judgment is GRANTED as to all claims with the exception of the claim alleged in Civil Action No. 93–4374 relating to plaintiff's transfer to Northampton County Prison;

3. Plaintiff's Motion for a Preliminary/Permanent Injunction filed September 23, 1993 is DENIED; and

4. Plaintiff's consolidated Civil Action No. 93–3734 (including claims in C.A. No. 93–4374) is DISMISSED with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.

### *REPORT AND RECOMMENDATION*

May 24, 1994.

RUETER, United States Magistrate Judge.

Presently before me are six (6) separate *pro se* actions, filed pursuant to 42 U.S.C. § 1983, against Thomas G. Frame, Warden of Chester County Prison, and two other prison officials. The six cases were consolidated under the above-captioned number. At the time he filed these actions, plaintiff

---

1. I am treating plaintiff's May 29, 1994 submission captioned "Motion for Reconsideration" as plaintiff's objections to the Report and Recommendation.

was a pretrial detainee at Chester County Prison. In each of the actions, plaintiff complains about conditions at the prison. He has since been released from custody.

On January 7, 1994, defendants filed a motion to dismiss plaintiff's claims for failure to state a claim upon which relief could be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Because defendants had attached affidavits and other materials to the motion, I ordered that it would be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). Plaintiff did not respond in any way to the motion, nor did he attend oral argument scheduled for the motion. For the following reasons, it is recommended that defendants' motion be granted as to all but one of the actions, because the undisputed facts demonstrate that plaintiff is not entitled to relief in five of the six cases. Furthermore, the Court recommends that all of the claims in this consolidated action be dismissed pursuant to Fed.R.Civ.P. 41(b) because of plaintiff's failure to prosecute this case.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was arrested on June 18, 1992, in Chester County, on charges of robbery, theft, receiving stolen property, conspiracy, possessing instruments of crime, simple assault, and aggravated assault. (Case No. 0296092).[1] The plaintiff was detained pending trial on or about July 6, 1992, at the Chester County Correctional Facility after he was charged with escape, resisting arrest and criminal mischief. (Case No. 0280092). He remained at Chester County Prison until August 3, 1993, when he was transferred to Northampton County Prison for security reasons (McFadden Aff. ¶ 41, Exhibit "A" to Motion to Dismiss). The plaintiff was housed in Northampton Prison until October 11, 1993, when he was returned to Chester County Prison. Plaintiff was released from pretrial incarceration on October 18, 1993.

(McFadden Aff. ¶ 6). Counsel for plaintiff in a related civil action confirmed that plaintiff no longer is detained at Chester County Prison and is free on bail. (N.T., 4/5/94 at 7).

The plaintiff, while detained at Chester County Prison, filed the six (6) separate actions[2] alleging the following claims:

1) 93-3734: Plaintiff averred that while he was a pretrial detainee at Chester County Prison, he was under the "immediate threat" of being held in a two-man cell which was inadequately spaced and poorly ventilated. (Complaint, p. 3, ¶ IV). Plaintiff further claimed that the prison dayroom had faulty spacing and ventilation. (Complaint, p. 4, ¶ IV). As a result, the plaintiff sought compensatory and punitive damages, as well as declaratory relief. (Complaint, p. 4, ¶ V).

2) 93-3735: Plaintiff alleged that while in prison he was forced to eat pork or food made with pork products which was against his religion. (Complaint, p. 3, ¶ IV). As a result, he requested injunctive relief and damages. (Complaint, p. 4, ¶ V).

3) 93-3736: Plaintiff complained that the prison law library was inadequately stocked with materials and it lacked sufficient personnel. (Complaint, p. 3, ¶ IV). In addition, he claimed that he was forced to purchase legal paper, envelopes, and writing utensils. (Complaint, p. 4, ¶ IV). Therefore, he demanded compensatory damages and declaratory relief. (Complaint, p. 3, ¶ V).

4) 93-3737: Plaintiff averred that he was forced to shower in front of other inmates without wearing his undershorts. He stated that showering "without guarding his modesty" violated his religious beliefs. (Complaint, pp. 3–4, ¶ IV). As a result, the plaintiff sought compensatory and punitive damages along with injunctive relief. (Complaint, p. 4, ¶ IV).

5) 93-3946: Plaintiff contended that he was illegally transferred to maximum security without any justification. This segrega-

---

**1.** This procedural history was compiled from the Defendants' Motion to Dismiss, "case information" sheets sent to this Court by the Chester County District Attorney's Office, and records from Northampton County Prison. These information sheets and prison records have been filed with the Clerk of the Court by order of the Court.

**2.** Plaintiff filed a seventh lawsuit, No. 93-0554, which has not been consolidated with his other six actions. In this action, defendant also complains about the conditions of confinement at Chester County Prison. See Footnote 6 *infra*.

tion, he alleged, deprived him of proper medical attention, access to religious services, and contact visits. (Complaint, pp. 3–4, ¶ IV). He argued that placement in such deplorable conditions in maximum security amounted to a constitutional violation and he demanded his immediate release from maximum security. He requested the Court to declare that placing an inmate in maximum security is unconstitutional and to award both punitive and compensatory damages. (Complaint, p. 4, ¶ V).

6) 93–4374: Plaintiff claimed that he was transferred without notice to Northampton County Prison as a retaliatory measure against him by Chester County Prison officials for the plaintiff's complaints. (Complaint, pp. 3–4, ¶ IV). The plaintiff sought a transfer back to Chester County Prison and compensation for his mental anxiety. (Complaint, p. 4, ¶ V).

After ordering these actions to be consolidated, the Honorable Louis H. Pollak referred them to Honorable William F. Hall for report and recommendation on September 9, 1993. On September 10, 1993, plaintiff wrote to Judge Pollak and apologized for the inconvenience he caused the Court as a result of his many complaints. He told the Court that he was "in the process of withdrawing" the complaints that contain minor issues. Indeed, plaintiff stated that he filed motions to withdraw two of his cases. However, the docket does not reflect that plaintiff filed motions to withdraw claims.[3]

The defendants, on January 7, 1994, filed motions to dismiss the complaints for failure to state claims upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). No timely response was filed by plaintiff in accordance with Local Rule 20(c). On March 7, 1994, this matter was referred to me for a report and recommendation after the retirement of Judge Hall. Since the defendants' motion was to be treated as a motion for summary judgment, I issued an order dated March 21, 1994 ordering plaintiff to respond to defendants' affidavits and other proof in order to determine whether a genuine issue of material fact existed for trial. The Court also advised the plaintiff of the requirements of Federal Rule of Civil Procedure 56(e).[4] Plaintiff was given until April 4, 1994 to respond to defendants' motion. This notice was sent by mail to plaintiff's last known address on March 21, 1994.[5]

In order to provide both parties with a fair opportunity to present their claims, the Court gave notice of oral argument on the motion for summary judgment to be held on April 5, 1994.[6] However, plaintiff failed to appear at this hearing. (N.T. 4/5/94 at 1–5). On April 12, 1994, counsel for plaintiff wrote a letter to the Court and advised that plaintiff changed his address. In this letter, counsel stated that the plaintiff told him that he had not received the prior court notices. Upon receipt of the letter, my chambers immediately mailed to the plaintiff's new address a copy of my order of March 21, 1994 ordering plaintiff to respond to defendants' motion to dismiss and advising him of the

3. In view of plaintiff's stated intention to withdraw some of his complaints, and because plaintiff was no longer a pretrial detainee, on March 25, 1994, I denied his motion for appointment of counsel after applying the factors set forth in *Tabron v. Grace*, 6 F.3d 147 (3d Cir.1993).

4. Rule 56(e) provides in relevant part:

   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

5. My staff made inquiries as to plaintiff's whereabouts to the Records Departments for both Chester County Prison and Northampton County Prison, as well as the Office of the District Attorney for Chester County. These conversations revealed he last resided at 341 East Bernard Street, West Chester, Pennsylvania, 19380. Counsel for plaintiff in a related action confirmed that as of April 5, 1994, this was plaintiff's last known address. (N.T. 4/5/94 at 3–4).

6. A pretrial conference was also held on this date for Civil Action No. 93–0554, another 42 U.S.C. § 1983 action against Chester County Prison, which pertained to the prison regulation prohibiting the wearing of religious headgear outside of the prison cellblocks. Counsel had been appointed for the plaintiff for this matter, and he appeared in Court on April 5, 1994.

requirements of Fed.R.Civ.P. 56(e). Plaintiff still has not responded to defendants' motion for summary judgment.

## II. FAILURE TO PROSECUTE

Federal Rule of Civil Procedure 41(b) provides in pertinent part:

> **(b) Involuntary Dismissal: Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

The Supreme Court has held that when a plaintiff fails to prosecute a case, the district court has the inherent power to dismiss *sua sponte* without affording notice or providing an adversary hearing to the plaintiff. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Imposition of this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendar of the district court. *Id.* at 629–30, 82 S.Ct. at 1388. In *Link, supra,* the Supreme Court affirmed the district court's dismissal of an action because of counsel for plaintiff's failure to attend a pretrial conference. *Id.* at 628–29, 82 S.Ct. at 1388.

■ When, as here, a *pro se* prisoner fails to adhere to readily comprehended court orders, the district court has authority to dismiss for want of prosecution. *Jourdan v. Jabe,* 951 F.2d 108 (6th Cir.1991); *Trexler v. Dombrow,* 835 F.Supp. 247 (E.D.Pa.1993). In *Jourdan, supra,* the *pro se* prisoner did not comply with discovery and pretrial motion cutoff dates. The district court dismissed the plaintiff's action for failure to comply with these deadlines. In affirming the order, the court of appeals ruled that a prisoner suing *pro se* was not entitled to special consideration in determining whether to dismiss a complaint for failure to adhere to readily comprehended court deadlines. The court reasoned that a lay person can comprehend straightforward procedural requirements as easily as a lawyer.

Consistent with the reasoning in *Jourdan,* this Court has held that a *pro se* plaintiff's failure to respond to a summary judgment motion provides a basis for dismissing an action for failure to prosecute. *See Wade v. Wooten,* No. 90–2373, 1993 W.L. 298715 at *6 (E.D.Pa. July 30, 1993); *Gay v. Wright,* No. 90–0770, 1990 W.L. 145553 at *3–4 (E.D.Pa. Sept. 27, 1990); *Padro v. Heffelfinger,* 110 F.R.D. 333–35 (E.D.Pa.1986).

■ In *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863 (3d Cir.1984), our Court of Appeals instructed that in deciding whether to dismiss a case for want of prosecution, the district court should consider six factors. *Id.* at 867. These factors are (1) the extent of the party's personal responsibility; (2) prejudice to the adversary; (3) whether there has been a history of dilatoriness in the case; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.* at 868. All of these six factors need not be satisfied in order to justify dismissal of plaintiff's claim. *Mindek v. Rigatti,* 964 F.2d 1369, 1373 (3d Cir.1992).

### First, Personal Responsibility

In this case plaintiff has proceeded *pro se.* Thus, he is solely responsible for his failure to respond to the motion for summary judgment. Since plaintiff had enough energy and skill to file seven separate lawsuits, he surely had the ability to respond in some fashion to the defendants' motion.

### Second, Prejudice to the Adversary

Defendants, public officials of Chester County Prison, have been prejudiced by plaintiff's failure to respond to their motion. By failing to respond for over four months, plaintiff has made it difficult for this Court to determine whether there are any genuine issues of fact which may eliminate the need for a lengthy trial. Plaintiff has made numerous allegations against the defendants. They have had to retain an attorney and assist him in preparing a defense. The defendants are entitled to have the matter decided promptly. By failing to respond to the motion, a decision on this matter has been unduly delayed.

### Third, History of Dilatoriness

Plaintiff filed six different actions complaining of conditions of confinement at Chester County Prison. In September 1993, he wrote to Judge Pollak stating he intended to withdraw some of his "minor" claims but, to date, he has failed to follow through with his representation. On March 21, 1994, plaintiff was ordered to respond to defendants' motion for summary judgment by April 4, 1994 and was advised of the requirements of Rule 56(e). Plaintiff has not responded to date. On April 5, 1994, the Court scheduled an oral argument on the motion, but plaintiff failed to appear. In sum, plaintiff has not pursued this case beyond the mere pleadings despite being afforded ample opportunity.

### Fourth, Willful Conduct or Bad Faith

As noted earlier, the Court gave the plaintiff a readily comprehended court deadline and advised of the requirements of Rule 56(e). Notice was sent to two different addresses for the defendant. Thus, it can be inferred that plaintiff's conduct was willful.

### Fifth, Alternative Sanctions

Sanctions other than dismissal are not available. Awarding attorney's fees would not be appropriate. Treating the motion for summary judgment as uncontested, see Local Rule 20(c), would be an appropriate sanction, but in reality this alternative would also result in the termination of plaintiff's actions.

### Sixth, The Merits of Plaintiff's Claims

My review of the plaintiff's claims, as set forth below, shows that all but one are without merit. Plaintiff would recover little or no damages should he prevail on his only meritorious claim.

Given all of the above circumstances and the fact that plaintiff is no longer incarcerated at Chester County Prison, it is apparent that plaintiff has lost interest in his six lawsuits and has willfully failed to prosecute them. Accordingly, I recommend dismissal of plaintiff's consolidated action pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute.

### III. *MOTION FOR SUMMARY JUDGMENT*

Although the Court recommends dismissal of defendant's actions for failure to prosecute, the Court also finds that summary judgment should be granted as to five of the six actions since the undisputed facts set forth in the defendants' motion establish that they are entitled to judgment as a matter of law on those five claims. See Fed.R.Civ.P. 56(c).

■ A court will grant summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the absence of a genuine issue of material fact but need not refute the non-moving party's claim. The non-moving party then has the burden of going beyond the pleadings and producing specific facts indicating that there is a genuine issue for trial. If it fails to do so, summary judgment will be granted in favor of the moving party. *Id.; Pastore v. Bell Telephone Co. of Pa.,* 24 F.3d 508, 511 (3d Cir.1994).

### A. *MOOT CLAIMS*

Defendants contend that plaintiff's requests for both declaratory relief and money damages, or at very least the claim for declaratory relief, are moot because the plaintiff is no longer a pretrial detainee at Chester County Prison.

■ A question is moot when it no longer presents a "live" controversy. In particular, the courts have held that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. *Abdul–Akbar v. Watson,* 4 F.3d 195, 206–07 (3d Cir.1993); *Weaver v. Wilcox,* 650 F.2d 22, 27 (3d Cir.1981). However, an alleviation of an alleged unconstitutional condition does not moot a prisoner's claim for actual and punitive damages. *United States ex rel. Jones v. Rundle,* 453

F.2d 147, 150 (3d Cir.1971); *Wilson v. Prasse*, 404 F.2d 1380, 1381 (3d Cir.1968).

■ Here, plaintiff's requests for declaratory and injunctive relief in his six consolidated complaints are moot as a result of his release from Chester County Prison on October 18, 1993. Thus, plaintiff does not have standing to pursue these claims.

### B. *DAMAGE CLAIMS*

Plaintiff, in addition to his demands for declaratory relief, also desires an award of damages for his alleged injuries. Compensation, however, can only be provided if plaintiff's claims are found to have merit. For the reasons that follow, I find that plaintiff is not entitled to compensatory or punitive damages for five of the actions because the uncontroverted facts demonstrate that the defendants did not deprive him of his constitutional rights.

### 1. Civil Action No. 93–3734—*Threat of Being Housed In Two–Man Cell*

Plaintiff alleges that he was "under the immediate threat" of being placed with other inmates in a two-man cell that measures approximately 22½ feet of floor space. (Complaint, p. 3, ¶ IV). The ventilation there was poor, he claims, and "the conditions inside the cell during the summer season are intolerable, with the only moderate relief is buying an electric fan from the prison canteen at the inflated price of $15.00." (Complaint, p. 4, ¶ IV). Additionally, plaintiff avers that the "breathing in the dayroom can be difficult because at any given time, 32 inmates share a floor space that consists of approximately 2,425 square feet." He notes while ventilation in the dayroom is poor, the guard station is air conditioned. (Complaint, p. 4, ¶ IV). He argues that as a result of these conditions, his Eighth and Fourteenth Amendment rights have been abridged and, therefore, he is entitled to compensatory and punitive damages.

■ Whether a particular condition imposed on a pretrial detainee is a violation of his constitutional rights depends on whether that condition amounts to punishment of the detainee. *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 991 (3d Cir.1983),

cert. denied, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). Specifically, a reviewing court must determine whether the disability "is imposed for the purpose of punishment or whether it is an incident of some other legitimate governmental purpose". *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979).

■ In the instant matter, the undisputed facts demonstrate that the plaintiff was *never* subjected to the conditions of which he complains. Plaintiff avers that he was "under the immediate threat" of being placed in inadequate cell conditions, *not that he was* ever subjected to these conditions. In fact, the uncontroverted evidence establishes that the threatened cell conditions at Chester County Prison, which plaintiff feared, did not exist at the time of plaintiff's incarceration.

D. Edward McFadden, Director of Inmate Services for Chester County Prison, in his affidavit attached to defendants' motion, stated that the cell which the plaintiff occupied during his incarceration at Chester County Prison was a double occupancy cell which measured 70 square feet. (McFadden Aff. ¶ 10). There are no cells which fit the measurements that the plaintiff complains of at the Chester County Correctional Facility. (McFadden Aff. ¶ 11).

■ With respect to plaintiff's allegations regarding the poor ventilation in the prison dayroom, they are insufficient to demonstrate that the conditions amounted to punishment imposed on the plaintiff by prison officials. Clearly, the conditions described do not involve the wanton and unnecessary infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Reading the complaint liberally, it can be inferred that the plaintiff did, at some time, have difficulty breathing during the summer in the dayroom because of the presence of many inmates. However, the complaint does not allege that plaintiff was compelled to stay in the dayroom when it was crowded.

In response to this allegation, defendants have submitted an affidavit which establishes that the prison meets all ventilation requirements of the State Health Department. (See

McFadden Aff. ¶ 9); 37 Pa.Code § 95.226(4). The uncontroverted facts of the affidavit, as well as the allegations of plaintiff's complaint, show that the conditions in the prison day room did not amount to "punishment", but rather were normal climatic conditions prevalent in a crowded room on a hot summer day. See *Loe v. Wilkinson,* 604 F.Supp. 130, 133 (M.D.Pa.1984) (the fact that humidity and temperatures were high in hot summer months did not make ventilation system in prison inadequate). Therefore, I recommend summary judgment be granted against the plaintiff on his claim in Civil Action No. 93–3734.

### 2. Civil Action No. 93–3735— *Serving Pork Products*

Plaintiff complains that as a Muslim, "it is against his religious beliefs to consume pork or pork byproducts." (Complaint, p. 3, ¶ IV). Plaintiff contends that he "discovered that he was being fed foods containing pork products without his knowledge, including, but not limited to, pudding, ice cream, bread, cake, icing, ... etc." (Plaintiff's Complaint, p. 3, ¶ IV). Plaintiff states he discovered this on June 20, 1993, after being incarcerated approximately one year. (Complaint, pp. 3–4, ¶ V).

The First Amendment to the Constitution requires that prison officials strive to make accommodations for the religious beliefs of inmates. *Africa v. Pennsylvania,* 662 F.2d 1025, 1031 (3d Cir.1981), *cert. denied,* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982). However, in prison, religious practices are subject to reasonable restrictions to preserve order and safety. *Long v. Parker,* 390 F.2d 816, 820 (3d Cir.1968).

Generally, inmates who are practicing Muslims are entitled to a diet which provides them with adequate nourishment without the consumption of pork. To achieve this goal, prison officials should provide inmates with alternative foods when pork products are served. Furthermore, efforts should be made to prepare food so that non-pork foods cannot be contaminated with

pork. See *Barnett v. Rodgers,* 410 F.2d 995, 1001–02 (D.C.Cir.1969); *Masjid Muhammad–D.C.C. v. Keve,* 479 F.Supp. 1311, 1318–21 (D.Del.1979) (Stapleton, J.).

In the instant case, the undisputed facts show that Chester County satisfied the above requirements. When meals containing pork are served, substitute or alternative foods are available to all inmates who do not eat pork for religious reasons. (McFadden Aff. ¶ 14). Chester County Prison has a very small Islamic community (approximately 20–25 inmates). (McFadden Aff. ¶ 15). As soon as these inmates' concerns were made known to the officials at Chester County Prison, steps were taken to ensure that pork products were not included in meal preparation, including requesting information from food service providers as to the use of pork. (Exhibits 1, 2, 3 to Motion to Dismiss; McFadden Aff. ¶ 16).[7]

By providing alternatives to pork at meal times, as well as checking with food suppliers to ensure the absence of pork in its products, Chester County Prison has accommodated the religious tenets of the Muslim faith. Therefore, since the undisputed record demonstrates that Chester County Prison provided plaintiff with food other than pork and did not use pork products in its food preparation, I recommend that summary judgment should be granted against the plaintiff in Civil Action No. 93–3735.

### 3. Civil Action No. 93–3736— *Inadequate Law Library*

Plaintiff asserts that the prison law library is "inadequately stocked according to the Minimum Collection for Law Libraries, American Association of Law Libraries, and the Special Committee on Law Libraries Services to Prisoners." (Complaint, p. 3, ¶ IV). In addition, he contends no Shepards Citations exist in the law library, and that the prison does not provide qualified personnel to assist plaintiff in his research. (Complaint, pp. 3–4, ¶ IV). Plaintiff also complains that he is required to purchase paper,

---

7. Chester County Prison only purchases foods which are in accordance with the rules and regulations of the "Kosher" laws of the Jewish faith; i.e., containing no pork or pork products, among

other things. (McFadden Aff. ¶ 17). Defendants' Exhibits 1, 2, 3 contain confirmation from rabbis that all foods provided to Chester County Prison are free from pork.

envelopes, pens, postage and notary fees, which cumulatively disadvantage the plaintiff by denying him access to the courts. (Complaint, pp. 3–4, ¶ IV). Finally, "plaintiff seeks compensatory damages for being put in jeopardy of using law which may no longer be law and for being charged to gain access to the courts, along with any other declaratory relief." (Complaint, p. 3, ¶ V).

The constitutional right of an inmate to gain access to the judiciary was addressed in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). There the Court held prison authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law. *Id.* at 828, 97 S.Ct. at 1498.

Here, the Director of Inmate Services testified that Chester County Prison spends approximately $7,000 per year on research materials in its law library. (McFadden Aff. ¶ 18). All materials, including periodicals and legal updates ("pocket parts"), in the Chester County Prison law library are furnished by West Publishing Company. These materials are regularly updated by a representative from West Publishing Company. (McFadden Aff. ¶ 19–20).

Nowhere in the plaintiff's complaint does he aver that Chester County Prison failed to provide a sufficient legal library to its inmate population. Instead he complains that there is neither Shepards Citations nor anyone schooled in the law to assist him. The Supreme Court, in *Bounds v. Smith, supra,* held prison officials are not required to provide both legal assistance *and* an adequate law library. *Id.* at 828, 97 S.Ct. at 1498. Although the record does not establish whether a legal staff is provided, the evidence shows that West Publishing Company furnishes essential research materials and updates all legal texts and periodicals. (McFadden Aff. ¶ 19–20).

■ While plaintiff complains that no Shepards are available to verify citations, the court only must determine "whether the resources provided satisfy the minimum that *Bounds* requires." *Abdul–Akbar v. Watson,* 4 F.3d 195, 204 (3d Cir.1993). The lack of any particular volume or research aid, by itself, cannot be construed as imposing a barrier to constitutionally required legal access. *Id.* at 203–04. All that is required is that the available resources enable the prisoner to "identify the legal issues he desires to present to the relevant authorities, including the courts, and to make his communications with and presentations to those authorities understood." *Id.* at 203. The undisputed facts demonstrate that the legal resources provided to the plaintiff satisfied this requirement.

■ Plaintiff further argues that his right to access to the judiciary was impeded by the prison's failure to give free pens, papers, envelopes, and postage. (Complaint pp. 3–4, ¶ IV). The Supreme Court has held "that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." *Bounds, supra,* 430 U.S. at 824–25, 97 S.Ct. at 1496.

The undisputed facts demonstrate that Chester County Prison does supply the above items free of charge to indigent inmates. (McFadden Aff. ¶ 21–23). If plaintiff failed to receive these utensils, it was because he either failed to request such services or did not qualify as an indigent inmate. (McFadden Aff. ¶ 24).

Finally, plaintiff failed to demonstrate any injury resulting from the alleged denial of free supplies. Specifically, plaintiff has not shown that because of the denial of supplies, he was actually denied access to the courts. *See Kershner v. Mazurkiewicz,* 670 F.2d 440, 444 (3d Cir.1982). Accordingly, I recommend that summary judgment be granted against plaintiff in Civil Action No. 93–3736.

### 3. Civil Action No. 93–3737—*Showering While Wearing Clothes*

In his complaint, plaintiff argues that as a Muslim, "it is against his religious beliefs to shower in the presence of others without guarding his modesty." (Complaint p. 3, ¶ IV). By showering with his undershorts on, plaintiff contends, "the possibility of confrontation is eliminated as opposed to show-

ering nude, where confrontation is imminent should an inmate gaze at the private parts of the plaintiff in a lustful manner." (Complaint, pp. 3–4, ¶ IV). The plaintiff seeks compensatory and punitive damages along with injunctive relief.

In a prison setting, an inmate's constitutional freedoms must be weighed against the interest of maintaining institutional security and preserving discipline. *Shabazz v. O'Lone,* 782 F.2d 416, 419 (3d Cir.1986). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).

In determining reasonableness of the regulation, courts should consider four factors: (1) whether there is a "valid rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) the extent to which accommodation of the asserted right will impact on prison staff, other inmates, and on the allocation of limited prison resources; and (4) the existence of a ready alternative that duly accommodates the prisoner's rights at *de minimus* costs to valid penological interests. *Turner v. Safley, supra* at 89–91, 107 S.Ct. at 2261–62.

In this case, the rules and regulations of Chester County Prison forbid any prisoner from wearing any clothing, undergarments or towels in the showers, although towels may be worn both to and from the showers. (McFadden Aff. ¶ 25). The purpose of the rule is to limit the transportation of contraband, including weapons, to and from the shower area, in order to protect the safety and welfare of all inmates using this area. (McFadden Aff. ¶ 28). The regulation is applied to all inmates, without consideration to their religious denomination. (McFadden Aff. ¶ 26–27). The rule was enacted because the shower facility at the prison is an area prone to violence and injury. Inmates are particularly susceptible to injury while in the shower. They are close to other inmates, unclothed, and their attention is diverted to the task of bathing themselves.

The protection of the entire prison population is a legitimate governmental interest that is served by this regulation. Indeed, officials have a duty not to expose prisoners to "pervasive risks of physical assault." *Young v. Quinlan,* 960 F.2d 351, 364 (3d Cir.1992). No reasonable ·alternative exists to curtail violent activity in the shower area without sacrificing the health and privacy of the institution's inhabitants.

Accommodating plaintiff's wish to shower with his undergarments on would subject the prisoners themselves to undue risk and would severely hamper efforts on behalf of corrections officials to effectively run the prisons. Plaintiff has not suggested any reasonable alternative which could accommodate the need for security in such an area prone to violence. For example, stationing guards in the showers while inmates bathe is not a viable alternative. This action would infringe upon the privacy of the inmates and exhaust scarce resources. Therefore, the undisputed facts demonstrate that regulation is reasonably related to legitimate penological goals. Accordingly, I recommend that summary judgment be granted against the plaintiff in Civil Action No. 93–3737.

### Civil Action No. 93–3946—*Administrative Segregation*

Plaintiff asserts that for nine days beginning July 6, 1993, he was moved from the general population to maximum security without justification and that during that time he was denied access to the prison law library and allowed no contact visits. (Complaint p. 3, ¶ IV). Plaintiff complains that during this administrative confinement he was placed in a cell measuring approximately 6½ feet by 9½ feet, which was poorly ventilated and contained no screens to keep out insects. (Complaint p. 3, ¶ IV). Plaintiff avers that state law prohibits arbitrary segregation without due process of law. (Complaint p. 3, ¶ IV). Therefore, he demanded immediate release from maximum security,. a declaration that maximum security is unconstitutional, and an award of both punitive and compensatory damages. (Complaint p. 4, ¶ V).

According to the defendants, plaintiff was placed in maximum security on July 6, 1993, based on information that he was organizing a "sit down" in the mess hall that day. (McFadden Aff. ¶ 30). Since the mess hall is an area prone to riots and injuries, the plaintiff was isolated from the other inmates because it was believed to be the only way to prevent an uprising. (McFadden Aff. ¶ 31–32). The plaintiff remained in maximum security for nine days and then returned to the prison's general population. (McFadden Aff. ¶ 33–34). The record, however, is silent on whether the plaintiff was given some type of hearing either before or after the administrative segregation.

■ The plaintiff's nine day segregation from the general inmate population did not amount to a denial of his due process rights. Plaintiff was not entitled to a hearing prior to his segregation. Before due process would require a hearing, plaintiff must establish he had a protected liberty interest in remaining in the general prison population. The United States Constitution does not give the plaintiff a liberty interest in remaining in the general prison population. *Hewitt v. Helms,* 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983); *Martucci v. Johnson,* 944 F.2d 291, 294 (6th Cir.1991).

Furthermore, state law does not bestow upon the plaintiff a liberty interest in remaining in the general population. Chester County Prison is a county jail and its operation is governed by the regulations set forth in 37 Pa.Code § 95.221, *et seq.* The administrative regulations relevant to county jails do not create a liberty interest for a pretrial detainee to remain in a general prison population. *Doss v. Rapone,* 601 F.Supp. 935, 937 (E.D.Pa.1985). *See also Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989) (in order to create a protected liberty interest in the prison context, state regulations must explicitly create a right.) *But see Grandeson v. Cuyler,* 600 F.Supp. 967, 970 (E.D.Pa.1984) (Pollak, J.) (prisoners in *state* jails have protected liberty interest in remaining part of general prison population).

■ To establish a constitutional violation, plaintiff must show his segregation was done to punish him; that is, it was not reasonably related to a legitimate governmental objective. *Martucci v. Johnson,* 944 F.2d 291, 294 (6th Cir.1991). The undisputed record demonstrates that prison officials received oral information from the leader in the Muslim community in the prison, that plaintiff was planning a "sit down" in the mess hall. (McFadden Aff. ¶ 30). Prison authorities deemed the temporary segregation of the plaintiff as the "only way" to prevent an uprising. (McFadden Aff. ¶ 32). Courts recognize that prison officials may use segregated detention to control and protect inmates whose presence within the general population would create unmanageable risks. *Young v. Quinlan,* 960 F.2d 351, 364 (3d Cir.1992). In making this decision, prison officials have broad discretionary authority. *Martucci v. Johnson, supra* at 293–94. Thus, prison officials acted with legitimate governmental purpose when they ordered plaintiff temporarily segregated.

■ The conditions of plaintiff's confinement while in administrative segregation do not amount to punishment. Plaintiff claims that during the nine day segregation he was denied access to the telephone and religious services. The record demonstrates these deprivations were reasonably related to the goal of maintaining maximum security of certain inmates. Plaintiff's allegation that he was denied access to the prison law library has no basis in fact. D. Edward McFadden testified that visits to the law library by prisoners detained in maximum security are allowed at specific times. (McFadden Aff. ¶ 35). Only those maximum security prisoners who violate the rules of the library itself are not permitted to use the facility, but legal materials are still provided upon request. (McFadden Aff. ¶ 36). Prison regulations which reasonably limit the time, place, and manner in which prisoners may engage in legal research and prepare legal papers do not transgress constitutional protection as long as the regulations do not frustrate such access. *Mathis v. DiGiacinto,* 430 F.Supp. 457, 462 (E.D.Pa.1977).

■ Plaintiff complained of the ban on "contact visits" while in maximum security.

The undisputed record demonstrates that the prohibition of contact visits to prisoners in maximum security was not intended to punish them, but is reasonably related to the security goals of the prison, as it ensures that no weapons or contraband are smuggled inside the prison walls. (McFadden Aff. ¶ 36–37). Therefore, the prohibition of contact visits for maximum security prisoners does not amount to punishment violative of the Due Process Clause. *See Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984) (prohibition against contact visits between pretrial detainees and their family members was a reasonable, non-punitive response to legitimate security concerns).

■ Finally, plaintiff's allegations of the inadequate size and ventilation of his single occupancy cell while in maximum security do not amount to punishment violative of the Due Process Clause. These conditions, although discomforting, were reasonably related to a legitimate government objective; *i.e.,* to provide an area with maximum security. *See Bell v. Wolfish, supra* 441 U.S. at 537–543, 99 S.Ct. at 1873–76.

For all the above reasons, I recommend that summary judgment be granted against plaintiff in Civil Action No. 93–3946.

### 6. Civil Action No. 93–4374—*Transfer to Another Prison*

The final claim of the plaintiff is that on August 3, 1993, he was transferred from Chester County Prison to Northampton County Prison. (Complaint, p. 3, ¶ IV). Plaintiff asserts that this was a retaliatory measure taken by Chester County Prison because of his pending litigation against the penal institution. (Complaint, p. 3, ¶ IV). He avers the transfer caused him a "tremendous amount of anxiety, mood swings, family visits, hostile environment, as well as being housed with dangerous, or potentially dangerous, criminals." In addition, plaintiff alleges that he was "not allowed visits with his children, or to converse with his co-defendant, who is also incarcerated at Chester County Prison." (Complaint, pp. 3–4, ¶ IV). The plaintiff requested an order returning him to Chester County Prison and prohibiting his further transfer. Additionally, plaintiff seeks punitive and compensatory damages. (Complaint, pp. 4–5, ¶ V).

■ The Due Process Clause, in and of itself, does not protect a duly convicted prisoner against transfer from one institution to another. *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). However, pretrial detainees, such as the plaintiff, "have federally protected liberty interests that are different in kind from those of sentence inmates." *Cobb v. Aytch,* 643 F.2d 946, 957 (3d Cir.1981). Pretrial detainees retain constitutionally protected liberty interests that are not fully available to sentenced inmates. These are the Sixth Amendment right to effective assistance of counsel and the right to a speedy trial. *Id.*

The Third Circuit has held that a state is prohibited by the Sixth and Fourteenth Amendments from transferring a pretrial detainee without providing notice of the proposed transfer and an opportunity to be heard to oppose the transfer. The Court reasoned that non-consensual transfers, or those without notice, may violate a pretrial detainee's Sixth Amendment by removing him from the proximity of potential witnesses and his counsel, thereby curtailing his ability to communicate with them. *Id.* at 960. *See also Covino v. Vermont Dept. of Corrections,* 933 F.2d 128, 130 (2d Cir.1991); *Perkins v. Wagner,* 513 F.Supp. 904, 905–06 (E.D.Pa. 1981).

In the instant case, plaintiff was transferred to Northampton County Prison on August 3, 1993, and remained there until October 11, 1993. (McFadden Aff. ¶ 41; Northampton County Prison records). Defendants explain that the transfer was a direct response to the "sit down" planned by the plaintiff, as well as additional problems he caused when he was returned to the prison population following his nine day stay in maximum security. (McFadden Aff. ¶ 42).[8] Officials hoped that plaintiff's transfer would

---

8. Although the affidavit makes mention of "additional problems" caused by the plaintiff upon his return to the prison's general population, defendants cite no specific instances of improper conduct to support these allegations.

"break up" the subversive group to which the plaintiff belonged so as to preserve prison order and security. (McFadden Aff. ¶ 43). Finally, defendants stated that the transfer was unrelated to any pending litigation plaintiff might have against the prison. (McFadden Aff. ¶ 44–45).

The affidavit submitted by the defendants does not demonstrate that Chester County officials gave the plaintiff any type of notice or opportunity to be heard prior to his transfer to another institution as required by the Sixth Amendment. *See Cobb v. Aytch, supra* at 960. Although it is not clear from plaintiff's complaint that he sustained any damages resulting from a Sixth Amendment violation, the absence of any proof that Chester County officials gave plaintiff an opportunity to be heard prior to the transfer precludes this Court from recommending that the defendants' motion for summary judgment be granted as to this final claim. Nonetheless, for the reasons stated previously, the plaintiff's claim should be dismissed for failure to prosecute.

This result is not harsh in view of the *de minimus* injury alleged by the plaintiff resulting from the stay at Northampton County Prison. It appears from the record that the period of transfer did not preclude plaintiff from preparing for his criminal trial. Plaintiff was released from incarceration on October 18, 1993, and, according to court records, his trial on the robbery charges had not commenced as of April 18, 1994.[9] Plaintiff's Sixth Amendment right to consult with his lawyer and other witnesses could not have been seriously infringed since plaintiff has been free on bail during the past six months. This is sufficient time to consult with counsel and locate and interview potential witnesses.

For all the above reasons, the Court respectfully makes the following:

## RECOMMENDATION

AND NOW, this 24th day of MAY, 1994, it is respectfully RECOMMENDED that the

defendants' motion to dismiss and for summary judgment be GRANTED as to all claims with the exception of the claims alleged in Civil Action No. 93–4374 relating to plaintiff's transfer to Northampton County Prison. It is recommended that defendants' motion for an injunction be DENIED. It is further recommended that plaintiff's consolidated Civil Action No. 93–3734, (including claims in C.A. No. 93–4374), be DISMISSED with prejudice pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute.

---

9. According to court records, on May 18, 1993, plaintiff pled *nolo contendere* on the escape charges (No. 280092) and was sentenced on that day. This was before his transfer to Northamp-

ton County Prison. Thus, the transfer did not affect plaintiff's Sixth Amendment right to counsel in this case.